And now we will start on the last of our three cases, number 24-2249, Eregli, etc. v. ITC. Welcome back. Good to see you again. This is an important piece of the whole puzzle because through a number of these somewhat circular discussions, we end up at you got the relief that you needed in the sunset review. And so some of these really turn on the fact, did Erdemir actually get a fulsome review and did the commission properly then account for the facts of the no-dumping decision in this review as it claims that it has? I think for starters, a core question is, is there room under the statute to account for this intervening 2020 decision that found no dumping? And on that point, I think the best articulation of it is Judge Toronto's that looks at whether there's a likelihood or recurrence of material injury and was the commission legally required under the statute to consider whether there had actually been dumping prior to it being able to recur. So I guess I've been focused on in this case, I'm trying to understand something that certainly Judge Katzmann's decision, maybe the ITC as well, and that is that in the statutory provisions, the 1673D provisions, there's this provision for negligibility. That does not appear in the 1675B or C provisions. And I guess I'm trying to understand why that might be so. But in any event, in the original investigation, as I understand it, the commission does get to accumulate among different countries as it does in the 1675, now C, B as well. But the negligibility provision is country specific. Does everybody agree on that? Yes. Okay. And it's also the numerator in the negligibility ratio is only the bad imports, right? In this, the dumped ones for 1673D, the countervailing duties, the subsidized ones. Agreed. Okay. And yet, when you get to the two provisions, change circumstances or sunset review for the better in 1675, there's no provision for reassessing even under changed circumstances or even kind of on a forward looking basis, no provision for saying Turkey is just, you know, all of the bad imports. Now, the dumped imports are just too small a share of the total of imports of the same good. Instead, you have to do something else, which is figure out whether you can consider Turkey along with here five of the six other countries and whether Turkey's role in that makes no, what's the word, discernible adverse impact on domestic industry, which Judge Katzman said is a less demanding standard than negligibility. Do I have at least the lay of the land right as a descriptive matter? Yes. Okay. So why should that be so? Because it does feel like at bottom, the thing you, the thing that's at stake is whether you can get, are entitled to get in the sunset review provision, a re-evaluation of negligibility. So a couple of comments. I think that we're not claiming as a direct statutory argument that we are entitled to a recalculation of negligibility in the sunset review in the way that you've laid it out. I think we get there in a different way. One of them is this point and looking at discernible impact where it should be taken into account, not strictly as negligibility itself. I think the first way we get there is 1675-AA6, which says in either a CCR or a sunset review, the commission may look at the magnitude of dumping. And that is where we then trigger the magnitude of dumping definition under 1677-35-C. And we would say that the commission should take into account these material differences in the magnitude of dumping, aka the 2020 amended commerce decision, which says zero dumping for all of these imports, and use that as its trigger to then find the magnitude of dumping is fundamentally different and affects whether revocation would continue or recur. It's the hook to why this isn't continuation or recurrence, because in 2020, there's a new decision that says there's no dumping at all. Right. But if that way of looking at it, I guess what I'm hearing is that at bottom, your only real argument is essentially the challenge that the commission really didn't exclude the other Turkish company in its analysis, not what I thought was actually a separate legal argument, which would kind of go with this point about the language about recurrence or continuation, that the commission had to reconsider in this context, in this proceeding, the negligibility standard, which is, you know, like arithmetic. Right. Right. And I'm sorry, I agree with you, two separate issues, two separate issues. So the argument that I'm making is how is one hook to how we get into an assessment of the margin. I think looking for following the threat of revocation or continuation, would revocation lead to the continuation or recurrence of dumping? The statute then lays out particular factors that are considered, which is how we then get into the may accumulate language and looking at the discernible impact. Is that responding to your question? So in that sense, it I think was laid out correctly by Judge Katzmann in terms of the structure. What I think ultimately is kind of an important overlay is that relief was totally foreclosed under either of these channels. And a kind of third point then is the fact that the commission still included these non-subject imports, which they later called background. And Judge Katzmann seemed to be okay with that. But in the volume section, didn't make adjustments to discuss how the original injury determination was impacted by the 2020 decision. Can you show us where it is you think the commission was impacted by including the numbers? Yes. It's the first sentence of the accumulation decision. Page number? I can grab it. That would be great if you could. You said the first sentence? Yes. So 1816? It's in the actual Federal Register summary. Thank you. I think, right? That's right. Thank you. And that, I think, as a simple matter for remand is that, and it's central because it should be outcome determinative as well. It changes this core issue of the original volume impacts that are then required to be looked at from a pre-order perspective. And can you show me where on 1816 you're relying? And do you really mean the first page of the whole decision or just the turkey page? The accumulation. The first page of the accumulation discussion. So maybe it's not 1816. Maybe I have that wrong. Sorry. Your Honor, it's Appendix 1877. 1877. Thank you. And is that right, Ms. Strickfield? You're relying on 1877? I believe it is. And so why would we not read that as simply a background discussion about the original investigations, especially because, as I'm sure you know, I think there's two footnotes, 276 and 298, where the Commission seems to expressly say, we recognize Cholokolu is no longer part of this. Yeah, because it's an important context that I think drives the overall decision. I think looking at, and specifically as we asked for before the Commission, to look at a review and a recalculation of those initial volume impacts was the request that would sort of trigger an overall finding that there was an initial problem on the dumping calculation. If they, just for the sake of this question, if they didn't make that error, and they actually weren't considering the Cholokolu when they were doing the Sunset Review, just for the sake of argument, I recognize you don't agree that happened. We heard reference in one of the earlier arguments to various ways that your chances of prevailing in the Sunset Review were actually more favorable than in the other mechanisms we've been talking about today. Do you agree or disagree with that? I disagree. I think that the Sunset Review statutory structure is a bit more difficult. I think that it is certainly possible for the Commission to give effect to the 2020 decision with respect to Cholokolu, but I think that it is a more limited form of relief for Erdemeyer through the Sunset Review anyway, and I do think that the ITC's analysis when it was looking at whether dumping was likely to recur, there was a tricky bit of a gap. The 2016 Original Injury Decision is unchallenged. It is legally valid, and that is not what our claim was in the Sunset Review, that that should get reversed, nor could it get reversed in a Sunset Review proceeding. Our argument was rather that these facts should be taken into account when assessing whether or not there was a likelihood that there would be a recurrence of dumping because the intervening facts showed that there was no original dumping, and that should then be coming through the Sunset Review proceeding. I think Erdemeyer had maintained that first reconsideration, which did come first in 2020, and then the CCR was the most appropriate vehicle to literally on its face address circumstances that had changed that undermined the original finding. But in the Sunset Review, notwithstanding that overlay, when we do look at accumulation factors and we look at specifically the two factors in the statute about whether or not imports are likely to compete with each other in the domestic-like product and whether they are not likely to have no discernible adverse impact on the domestic industry, those factors are not specifically delineated further in the statute when it comes to looking at accumulation for Sunset Review. In Usinor, the CIT case, the court notes that this is largely a negligibility test without a strict numerical calculation. And it's an important point because essentially what should have happened through the accumulation analysis at a minimum, if not through my previous argument about why we're looking at the magnitude of dumping to make an adjustment, then what should have happened through the accumulation analysis is that the commission should have looked at whether or not these imports are now negligible. They're claiming that they did essentially by looking at other factors that are on a go-forward basis and not at all reviewing anything to do with the original determination. But it is important to also review what the impact of that intervening court decision on the issue of negligibility through the lens of the CIT case in Usinor. Is it at least the case, as I think was represented by maybe the government, you don't have a burden of proof in a Sunset Review, but you do in the reconsideration and the CCR? That's right with respect to this issue. So in the CCR, the burden of proof is to demonstrate that there are sufficiently warranted change circumstances that justify those changes. In Sunset Review, this is different. The statute requires a Sunset Review. You didn't have to prove anything to trigger it for sure, right? Exactly. And did you have to prove anything at all in the Sunset Review in order for it to turn out the way you would have preferred? Erdemeyer would have to put forward enough evidence that would show that the commission's decision in its favor would meet substantial evidence. I think in our brief, we went through a number of discussion points on where the commission's decision detracted, ignored evidence that detracted from its finding, which the commission acknowledges in its brief, but essentially says there was enough. There was enough there. I think that given how much weight was then put by the commission on the Sunset Review as being the fulsome review of Erdemeyer's reconsideration and change circumstances request, these gaps are particularly important. I would also note that Judge Katzmann's decision in a couple of places does seem to suggest that the CCR is perhaps the cleaner vehicle for some of these points to be addressed rather than the statute in the Sunset Review. The CCR wasn't in front of him. In fact, that decision came out after his decision, but I would just note that I think it's additional context. Thank you, Your Honors. May it please the Court. Spencer Tubia representing the appellees of the U.S. International Trade Commission. We ask that this Court affirm the commission's Sunset Review determination because that determination was supported by substantial evidence and otherwise in accordance with law. I hope my answers will clarify some of the confusion that came up during the change circumstance proceeding portion of this because as we noted before, this is the exact same statutory standard. And in fact, this brings me to my first point. I'll make four points about why the commission's determination was supported by substantial evidence. And first, Sunset Review determinations are purely perspective, and that was actually a direct quote from this Court in Venezuelan cement. And as Judge Toronto asked earlier, it's not just perspective in relief, but it's perspective in how the statute's construed to assess what would likely occur in the future if the orders were revoked. And because they're perspective, because of the fundamental principle of finality, the commission can't reach back and redetermine final original determinations under the statute, which is what negligibility was. Can you provide any help in saying here's why it makes that at the investigation stage there's this clean exclusion, you know, we're not interested in you any longer, that just doesn't appear in the we're going to keep doing this? Thank you, Your Honor. Yes, I can. Actually, I can point explicitly to the SAA at page 845 when it says that negligibility is only applied to final injury determinations. I will also point to Judge Wallach's opinion in Euston Orr 3. If all it says is what I just described, it's not yet a give me some sense of what policy is behind that. Yes, and Your Honor, I can point to Judge Wallach's actually opinion in Euston Orr 3, which is very interesting. It's almost us. Excuse me? It's us. And that opinion is actually very instructive though in this matter because it points to the fact that negligibility is a strict quantitative analysis that looks back into the past based on data on the record and as required under the statute actually on 1674, 1677-24, based on the record of data at the time of the commission's final determination. And that determination became final after the commission made it. Now, I note that Judge Wallach stated that negligibility is not a determination made during sunset review determinations because of the prospective looking nature of sunset review determinations. And that's because it's impossible to quantify what imports would actually be in the future if the orders were revoked under that prospective looking standard. And instead, the commission does, and as opposing counsel noted and Ms. which is distinctly different standard than negligibility because of the forward-looking nature of it. And I note that even under that forward-looking standard, Ms. Streffel noted that the commission didn't consider Cholokulu's exclusion from the order. As a matter of fact, it did actually. The commission noted explicitly at footnote 276 on appendices 877 that Cholokulu is no longer a subject producer in this order when it provided background information information as Judge Katzman noted about imports during the original investigation. The commission later on went to note on footnote 284, appendix 278, that the commission excluded all data in that it gathered during this investigation. Excluded Cholokulu from all that data and only included data from Erdemir and this is a very important point, your honor, a new producer on the record, Habas, which all but replaced Cholokulu's data on the record. Was it actually a new producer or just a newly prominent producer? Your honor, that's a very good question. So Habas was very briefly noted during the original investigation, but it was the end of the period investigation and the commission did not issue a questionnaire to Habas, so it did not gather data from Habas during the original investigation. But that data was on the record of this case and in fact the commission was required to consider that data as a matter of law and its perspective forward-looking analysis that I noted, again, explicitly cited by this court and it's explicitly noted in the statute. And to make their factual argument, and it's a very confusing factual argument, I think that's why there was a confusion here, is because essentially it's a legal argument disguised as a factual one because they're asking the commission to redetermine a final determination made during the investigation, negligibility, using the commission's forward-looking sunset review determination and the fundamental legal principle finality noted by the Supreme Court in Vermont Yankee precludes the commission from looking back and redetermining that legal determination, which is based on a specific snapshot in time. And I note that another instructive case is from the CIT and was consolidated fibers, and we noted that earlier in an earlier context. But in that case, plaintiffs were trying to make almost the exact same condition precedent argument that appellants are trying to do here in saying that subsequent facts that came to light after the commission's original determination kind of called into question the commission's price determination and therefore under the... So counsel, just in light of the fact that we've had a wonderful day of arguments, any unique points that you'd like to sum up for this particular case to just kind of bring our wonderful day to a close? And I know, yes, I think a very important point in this matter, I think a very important point in this matter is even if the commission were to go back and say, oh, look, subject imports were negligible during the original investigation and say they might have been negligible during the original... Sorry, investigation. That can't give legal effect because of finality, but they might have been negligible in the original determination. That still doesn't win the day because just because the commission found that subject imports were negligible in the CVD case does not mean that they weren't discernible in the immediate future if the order was revoked. And that's because of all the record evidence that we cited in our conclusory paragraph at Appendices 1880 through 1881, all of which excluded Cholokulu. So all of that data indicates that subject imports from Turkey would increase to a discernible level if the orders were revoked. And indeed, if the commission did find a different finding and say that subject imports may have been negligible during the investigation, if so facto, they would be negligible or discernible in the future. In this case, it would be ignoring all of that record evidence that excluded Cholokulu. And as noted earlier, the commission did not utilize information gathered during the original investigation as a benchmark. It just stated that as background, as Judge Katzman correctly noted. But it focused on and found most probative all the data that was cited at Appendices 1879 through 1881, which was exclusive of Cholokulu and showed that the commission's findings were supported by substantial evidence and otherwise in accordance with law. Unless you have something that you think is new, I'd just as soon at least invite. Thank you, Your Honor. Your colleague to come up, but it's not an invitation that hasn't. May it please the Court. I do just want to make a few points and I know you've taken a long time with us this morning. And one thing I want to address is this notion that the commission's sunset review report was somehow tainted by the fact that they discussed what happened in the original investigations. And I think it's important to point out they are required by statute to at least take into account their findings in the original determination as to volume, price, effect, and impact. And that's what they did. They did that and they made, they were, they parsed the data in a way they tried to acknowledge where they could not take Cholokulu out and where they could. And in fact, when they were considering the volumes, they cited to a particular table in the confidential staff report from the investigation that did carve Cholokulu's imports out. And the only time when they, in their actual analysis of discernible adverse impact, that they mentioned the original investigation is to cite the trend in Erdemir's imports in the investigation. They then relied on the data before them in the sunset review, which excluded Cholokulu's imports. And they found that Turkish producers would have the capability and the incentive to ship significant volumes to the United States if the orders were revoked. So I think it just was important to point that out. Negligibility, as we've discussed, is not something that they are to consider in a sunset review or change circumstances review. The statute lays out what they are to consider. Negligibility is not a part of that. And that's very clear in the statute. We would ask you to affirm the CIT's decisions in all three of these cases. This notion that Erdemir did not have a legal remedy here, I think has been shown that that's not the case. They had a remedy to appeal the original determination. They simply failed to pursue it. They slept on their rights. They had a remedy through the sunset review. The Commission fully considered their arguments there. They had a remedy here. And we would ask you to affirm the CIT. Thank you. Thank you. I would like to direct your honors to our opening brief in the 2249 case, pages 22 to 24, where we do lay out the confidential record on where it's legally significant that volumes from are continued to be referenced, including all the appendix references. This is the quote from the page that we were discussing. Exactly. Exactly. This is the full quote that Judge Stark, we were discussing, that I referred to as the first sentence on the accumulation section for Turkey, along with the citation. Among the legal error, we would say it's not a mere recitation of what these import volumes. What's missing is the assessment, the acknowledgement of the fact that those volumes have been rendered legally different by virtue of intervening litigation. That's the relief that should have come through there and in additional sections where there's other factors, including where subject imports might remain a particular share. These are the should have been taken into account. I would note that the claim that a sunset review is prospective in all ways is too broad. It does require a look back on pre-order conditions and that language should mean something. Judge Katzmann noted that several times. Another word on administrative finality. While we certainly understand the point and do agree that it's an important tenant, again, I think it is important to acknowledge that there are separate legal avenues for a company to address circumstances that do change. Those were all invoked here. Three separate opportunities that were forward from the time of the decision to try to give legal effect to a very significant intervening decision. I think the facts here are a bit precedent answers all of these questions at once, which is why these cases together are quite important, but I believe that the nuggets of the cases that we've identified make clear that a party like Erdemeyer should have rights to give effect to an intervening decision like this. Thank you and thanks to all counsel. You've been very responsive and very helpful coordinating these things and helping us. Appreciate it. The case is admitted and that completes our business for today. Nice to meet you. Yeah, you as well. I know. It happens and Jeff was able to reach the case.